Reversed and Remanded and Opinion filed August 23, 2005









Reversed and Remanded and Opinion filed August 23, 2005.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-03-01379-CR

____________

 

DOUGLAS HUFF
FLORES,
Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 183rd
District Court

Harris County, Texas

Trial Court Cause No. 900159

 



 

O P I N I O N

Following the denial of his motion to
suppress, appellant pled guilty to the offense of possession of marihuana
weighing more than fifty pounds and less than two thousand pounds.  In accordance with the terms of a plea
bargain agreement with the State, the trial court sentenced appellant to
confinement for nine years in the Texas Department of Criminal Justice,
Institutional Division.  In a single
point of error, appellant argues the trial court abused its discretion in
denying his motion to suppress.  We
conclude the trial court should have suppressed the marihuana discovered during
the warrantless search of appellant=s home.  Accordingly, we reverse and remand. 








Motion to
Suppress

Prior to entering a guilty plea, appellant
filed a motion to suppress seeking to have all evidence discovered as a fruit
of the warrantless search of his home suppressed pursuant to the Fourth
Amendment of the United States Constitution, Article I, Section 9 of the Texas
Constitution, and article 38.23 of the Texas Code of Criminal Procedure.  See U.S.
Const. amend. IV; Tex. Const.
art. I, ' 9; Tex. Code Crim. Proc. Ann. art. 38.23
(Vernon 2005). After an oral hearing, the trial court denied appellant=s motion.  Appellant subsequently entered a guilty plea
and filed a notice of appeal.[1]  We review whether the trial court abused its
discretion in denying appellant=s motion to
suppress. 

A.      The
Hearing

At the motion-to-suppress hearing, the
parties stipulated the search was made without a warrant.  The relevant facts from the
motion-to-suppress hearing are as follows:

On January 21, 2002, Deputy James A.
Savell of the narcotics task force team of the Harris County Sheriff=s Department
received a Anarcotics tip or clue call, [from an]
anonymous person [who] called into [the] office, indicating that there was a
person at [the address of] 812 English, who was involved in the sale of
narcotics, specifically, large amounts of marijuana.@[2]  








On January 22, 2002, Savell contacted
Sergeants Donald Pierce and Robert Barber, both members of the narcotics
enforcement team of the Harris County Sheriff=s Department, and
informed them of the tip.  The three
officers met and proceeded to 812 English in three separate marked patrol cars;
all three officers were in uniform. 
Around 4:00 p.m. or 5:00 p.m., the officers arrived at 812 English, a
single story residence in a middle class neighborhood.  Savell went to the front door and knocked,
and a woman answered the door.  Savell
asked the woman who was in the residence at the time, and she stated her son
and grandson were home.  She told Savell
her son=s name was Douglas
Flores, appellant.  Savell asked to speak
to him.  She told him appellant was in
the garage and went back inside the house to get appellant.

Savell did not wait at the front door for
appellant=s mother to return and instead walked with
Sergeant Pierce around the corner of the house, back towards the garage.  Sergeant Barber already had positioned
himself where he could see the back of the house.  All three officers proceeded toward the back
of the house where appellant=s mother had
indicated appellant was located.  They
walked down the driveway toward the garage. 
Savell did not go through any fencing to get to the back area of the
house.  The officers then saw appellant
exit the rear of the residence, and Savell asked appellant his name.  Appellant was cooperative and identified
himself.  Savell described appellant as
appearing apprehensive.

Savell told appellant he needed to talk
about a narcotics investigation and asked him if he would come to the front
yard with the officers.  Appellant
accompanied the officers to the front of the house.  At the front of the house, Savell told
appellant he had gotten information appellant was selling large quantities of
marihuana from his residence.  Appellant
denied it.  Pierce asked appellant for
consent to search his residence. 
Appellant did not consent.








Pierce then indicated to Savell they
needed to secure appellant, Afor his safety, as
well as ours, and [they] were going to weigh out some options as far as
continuing the investigation.@  According to Savell, appellant was detained
to maintain the status quo.  It was
Savell=s experience that
people who are suspected of dealing large amounts of narcotics often carry
weapons.  Consequently, for officer
safety, appellant was patted down prior to being placed in the back of the
patrol car.  As Savell patted appellant
down, he Aimmediately recognized an item similar to
being a bag containing a course [sic] leafy substance in [appellant=s] front right
pants pocket.@  Savell=s experience led
him to recognize the item as being consistent with a bag of marihuana.  Savell removed the item from appellant=s pocket and
discovered it was a bag of marihuana.  

Appellant was handcuffed and seated in the
rear of a patrol car.  Savell told
appellant he was not under arrest, they were conducting an investigation, and
someone would return to talk to him in a minute.  Appellant was not given Miranda
warnings.[3]  According to Savell, appellant was handcuffed
and placed in the back of the patrol car A[s]o [appellant]
could be in a secure place . . . not roaming around the scene or trying to make
contact or trying to regain entry into the house, keep him from contaminating
the investigation, basically.@

Appellant=s mother came out
of the house and asked to talk to one of the officers.  Pierce spoke to her briefly.  Savell then went back to the patrol car and
opened the door where appellant was seated. 
Appellant asked to speak to his mother; Pierce brought her over to the
car.  Appellant spoke with his
mother.  Savell was not privy to the
substance of their conversation.

Pierce spoke to appellant about his
options.  Appellant then signed a written
consent for search of his property. 
Savell witnessed appellant reading and signing the consent form.  When questioned about appellant=s consent to the
search, Savell replied:








Yes. . . .  It was our - - my opinion, at that point, when
we were talking to him in the vehicle, that we would have enough evidence,
provided we could get a canine unit to come out and assist, that we had enough
evidence for a search warrant.  So, there
was no need to try to coerce him or threaten him into signing this
consent.  The only thing that the consent
did for us was eliminate a couple of hours of our time.

Savell had spent about ten to fifteen minutes with
appellant before he signed the consent form.

After signing the consent form, appellant
told Savell he had marihuana in his garage. Appellant asked to be present
during the search; handcuffed, appellant accompanied the officers in their
search.  Appellant told the officers how
to open the garage door.  Savell smelled
a strong odor of marihuana within a few feet of the garage door, and when the
door was opened, he saw some blankets covering some objects in the back of the
garage.  The objects were sixty-five
bundles of marihuana, weight scales, cellophane wrapping paper, duck tape, axle
grease, saws, and cutting saws, items used for packaging and repackaging
bundles of marihuana.  During the search,
appellant sat in the front of the garage and watched.  Marihuana also was found inside the house.

Sergeant Pierce next testified at the
motion-to-suppress hearing as to his recollection of the events of January 22,
2002.  Pierce accompanied Savell and
Barber to appellant=s residence at 812 English, and he went to
the front door with Savell.  Appellant=s mother opened
the door and in response to questioning told them appellant and her grandson
lived there.  After she said appellant
was in the garage, Pierce walked down the side of the house and saw appellant
emerging from the back door.  The
officers and appellant then walked to the front of the residence.  Savell informed appellant that officers had
received information about narcotic traffic at his residence.  At this point, appellant did not consent to a
search. 








          Pierce told Savell to secure appellant
in the back of the patrol car for officer safety A[b]ecause weapons
and narcotics go hand in hand.@  Savell patted appellant down for weapons, and,
during the pat-down, Savell found a bag of marihuana.  Appellant was handcuffed and placed in the
back of a patrol car.  

Pierce went to speak with appellant=s mother and asked
her who had care, custody, and control of the residence.  She told him that she lived in the residence
with appellant and her grandson.  She
also stated appellant paid the rent. 
Pierce then approached appellant and asked him if he was sure that he
did not want to give consent.  Pierce
also told appellant that it would be necessary to secure the residence if
appellant did not consent to a search. 
Pierce explained securing the residence meant appellant=s mother and son
would have to exit the house.  Pierce had
to make sure no one else was in the house. 
Appellant told Pierce he would sign the consent form, but first, he
wanted to speak to his mother.  Pierce
brought appellant=s mother over to speak to him, but Pierce
did not know what they said. 
Subsequently, appellant signed a written consent to search.

Appellant accompanied the officers when
they searched the garage.  Appellant told
Pierce the marihuana was in the back of the garage.  Some marihuana also was found in a bedroom,
and a small amount of cocaine was recovered.

Sergeant Barber also testified at the
motion-to-suppress hearing.  Barber
testified that when he, Pierce, and Savell arrived at appellant=s residence, he
walked around to the side of the house to make sure it was safe in the back and
to prevent anyone from escaping through the 
back door.  Pierce and Savell
knocked on the front door.  Barber
testified he did not go through the backyard fence.  He saw appellant exit the back of the
residence, and, when appellant was asked by the officers to come over and talk,
he was cooperative.  Pierce and Savell
spoke with appellant while Barber maintained security around the residence.  Barber was present when appellant signed the
consent to search.








Appellant was the last witness to testify
regarding what transpired on January 22, 2002. 
Appellant was watching television when his mother answered a knock at
the door.  His mother told him an officer
wanted to talk to him and that they were going to the back, so appellant
intended to meet them in the back by going out the back door.  When he went outside, two officers were in
his back yard.  To get to his back yard,
the officers had to go through the driveway and open the gate to his back
yard.  One officer was looking in the
wash room, and appellant asked if he could help him.  The officer asked if he was Douglas Flores,
and appellant replied affirmatively.  The
officer told appellant they needed to talk and asked him to accompany them to
the front of the residence.  Appellant
complied; appellant did not feel he had a choice.          

After returning to the front of the
residence, appellant was asked whether he had marihuana in his garage, and
appellant said he did not.  The officer
asked appellant if officers could search the garage.  Appellant replied Ano@ and asked the
officers if they had a warrant.  One
officer said he did not have a warrant, but he would get one.  

Appellant was searched and placed in the
back of a patrol car.  Appellant
described the search of his person.  When
the officer approached, appellant told him that he had a small pocket
knife.  The officer took the pocket knife
out of appellant=s pocket. 
The officer placed his fingers in appellant=s pockets during
the search and pulled a small bag of marihuana from a small front pocket of his
pants.  One of the officers informed appellant
that he would be placed in the back of the patrol car until a warrant was
issued.  Appellant was handcuffed and
placed in the back of the patrol car.  

While in the back of the patrol car, an
officer asked appellant to sign a written consent; appellant replied thatA[he=d] rather see the
warrant.@ 
The officer directed another officer to bring appellant=s mother out of
the house.  Appellant thought the officer
was going Ato take@ his mother.  Consequently, appellant told the officer that
he would sign the consent form if the officers allowed his mother to go back
inside the house.  Appellant signed the
consent form and told the officers that there was marihuana in the garage.  Appellant admitted that the officers never
had their guns out or threatened or raised a hand to appellant or his mother.








After considering the arguments of counsel
and the evidence, the trial court denied appellant=s motion to
suppress.

B.      Standard
of Review        

We review the trial court=s ruling on a
motion to suppress evidence under an abuse of discretion standard.  Villarreal v. State, 935 S.W.2d 134,
138 (Tex. Crim. App. 1996).  If supported
by the record, a trial court=s ruling on a
motion to suppress will not be overturned. 
Hill v. State, 902 S.W.2d 57, 59 (Tex. App.CHouston [1st
Dist.] 1995, pet. ref=d). 
At a suppression hearing, the trial judge is the sole finder of
facts.  Arnold v. State, 873
S.W.2d 27, 34 (Tex. Crim. App. 1993); Hill, 902 S.W.2d at
59.  We give almost total deference to
the trial court=s determination of historical facts that
the record supports, especially when the trial court=s findings turn on
evaluating a witness= credibility and demeanor.  State v. Ross, 32 S.W.3d 853, 856
(Tex. Crim. App. 2000); Carmouche v. State, 10 S.W.3d 323, 327 (Tex.
Crim. App. 2000); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App.
1997).  We give the same amount of
deference to the trial court=s ruling on mixed
questions of law and fact if the question is resolved by evaluating credibility
and demeanor.  Ross, 32 S.W.3d at
856.  We consider de novo issues
that are purely questions of law.  Id.  If the trial court=s ruling is
reasonably supported by the record and is correct on any theory of law
applicable to the case, the reviewing court will sustain it upon review.  Villarreal, 935 S.W.2d at 138.

In the case at bar, the trial court did
not make explicit findings of historical facts. 
We therefore review the evidence in a light most favorable to the trial
court=s ruling.  See Carmouche, 10 S.W.3d at 327B28.  We assume the trial court made implicit
findings of fact supported in the record that buttress its conclusion.  See id. at 328.  We review de novo the lower court=s application of
the relevant Fourth Amendment standards. 
See id.








C.      The
Voluntariness of Appellant=s Consent

Appellant argues the trial court abused
its discretion in overruling his motion to suppress because his written consent
to search was (1) the fruit of unattenuated illegal police activities; and (2)
involuntary because it was the product of duress and coercion.[4]

We first address appellant=s contention that
his consent was the product of duress and coercion.  Appellant argues the totality of the
circumstances show he did not give consent voluntarily because he did not
consent until after (1) being handcuffed and locked in a police car; (2) being
subjected to coercive police procedures;[5]
(3) twice declining the officers= request for
consent to search; (4) acquiescing to a search after being told his mother and
son would be detained outdoors in January if he failed to do so; (5) being
aware that incriminating evidence would be found; (6) being surrounded by at
least three armed police officers; (7) being placed in a police car; (8) the
officers telling appellant they believed he possessed a large quantity of
marihuana; (9) the officers having previously been denied consent by appellant
twice; and (10) the officers= failing to inform
appellant of his right to refuse consent. 









AAt the core of the
Fourth Amendment . . . is the fundamental concept that any governmental
intrusion into an individual=s residence or
expectation of privacy must be strictly circumscribed.  Payton v. New York, 445 U.S. 573, 582
n.17 (1980).  Under the Fourth and
Fourteenth Amendments, a search conducted without a warrant issued upon
probable cause is A>per se
unreasonable . . . subject only to  a few
specifically established and well‑delineated exceptions.=@  Schneckloth v. Bustamonte, 412 U.S.
218, 219 (1973) (quoting Katz v. United States, 389 U.S. 347, 357
(1967)).  One of the specifically
established exceptions to the requirements of both a warrant and probable cause
is a search that is conducted pursuant to consent, so long as the consent is
voluntary.  Schneckloth, 412 U.S.
at 219B23.  The validity of a consent to search is a
question of fact to be determined from all the circumstances.  Ohio v. Robinette, 519 U.S. 33, 40
(1996);  Maxwell v. State, 73
S.W.3d 278, 281 (Tex. Crim. App. 2002). 
The consent must Anot be coerced, by explicit or implicit
means, by implied threat or covert force.@  Schneckloth, 412 U.S. at 228; see
also Allridge v. State, 850 S.W.2d 471, 493 (Tex. Crim. App. 1991) (AThe consent must
be shown to be positive and unequivocal, and there must not be any duress or
coercion.@). 
By the same token, consent is not established by Ashowing no more
than acquiescence to a claim of lawful authority.@  Bumper v. North Carolina, 391 U.S.
543, 548B49 (1968) (holding
where officer falsely represented he had a valid search warrant, consent not
voluntary).  In determining the meaning
of a voluntary consent, two competing concerns must be accommodatedCthe legitimate
need for such searches and the equally important requirement of assuring the
absence of coercion.  Schneckloth,
389 U.S. at 227.  In Texas, the State is
required to prove the voluntariness of consent by clear and convincing evidence
based on the totality of the circumstances.[6]  See Reasor v. State, 12 S.W.3d 813,
818 (Tex. Crim. App. 2000).  In this
case, the issue of consent does not turn upon an evaluation of credibility and
demeanor, so it is subject to de novo review.   See Reyes-Perez v. State, 45 S.W.3d
312, 316 (Tex. App.CCorpus Christi 2001, pet. ref=d).  








In making a determination of
voluntariness, courts consider various factors, including the following:  whether the consenting person was in custody,
whether he or she was arrested at gunpoint, whether he or she had the option of
refusing consent, the constitutional advice given to the accused, the length of
detention, the repetitiveness of the questioning, and the use of physical
punishment.  See Laney v. State,
76 S.W.3d 524, 532 (Tex. App.CHouston [14th
Dist.] 2002), aff=d, 117 S.W.3d 854
(Tex. Crim. App. 2003).  Courts also
consider the characteristics of the consenting person, including the person=s youth,
education, and intelligence.  Id.;
see Reasor, 12 S.W.3d at 818.[7]  Additionally, A[w]hile a warning
that an individual does not have to consent to a search and has the right to
refuse is not required nor essential, the showing of a warning is of
evidentiary value in determining whether a valid consent was given.@  See Meeks v. State, 692 S.W.2d 504,
510 (Tex. Crim. App. 1985).

In this case, the trial court heard
testimony from four witnesses at the hearing on the motion to suppress, three
officers and appellant.  Giving proper
deference to the trial court=s ruling, the
circumstances surrounding appellant=s consent to
search may be summarized as follows:  

_        Savell
received an uncorroborated anonymous tip, that a person at 812 English was
involved in the sale of large amounts of marihuana.

_        Three
officers went to the above address to conduct a Aknock and talk.@

_        Two
officers knocked on the front door of 812 English, and appellant=s mother answered.  A third officer kept an eye on the back portion
of the house.

_        When
appellant=s mother went inside the house to
get appellant, the officers  did not wait
for her to return but went around the side of the house to the backyard.

_        When
the officers approached the backyard, they saw appellant going out the back of
the house; appellant identified himself and agreed to accompany the officers to
the front of his house.

_        Once
at the front of the house and after being told by the officers that they
received information he was selling large quantities of marihuana from his
residence, appellant refused consent to a search of his residence.








_        After
appellant refused consent, to maintain the Astatus quo,@ the officers decided to detain him.  Appellant was patted down for officer safety.

_        During
the pat-down, a small bag of marihuana was discovered in appellant=s pocket.

_        Appellant
was handcuffed and seated in the back of a patrol car.  Appellant was told he was not under arrest.  

_        Appellant
was not given Miranda warnings.

_        After
appellant was handcuffed and sitting in the patrol car, one of the officers
told him that his residence would be secured if he did not give consent to a
search.  Appellant was further informed
that his mother and young child would be required to stay out of the house for
security purposes.

_        After
appellant spoke to his mother, he signed a written consent to search.

_        The
officers did not physically threaten appellant.

_        The
consent form informed appellant that he had the Aright not to have a search made of
[his residence] without a search warrant@ and a Aright to voluntarily consent to such a search.@

_        After
signing the written consent form, appellant told the officers he had marihuana
in his garage, and he accompanied the officers in their search of the garage,
during which the officers discovered sixty-five bundles of marihuana.

_        The
time between the officers= arrival at appellant=s residence and
appellant=s written consent was about ten to fifteen
minutes.

We conclude that the totality of the circumstances, as
outlined above, show appellant=s consent was not
freely and voluntarily given.  Rather,
appellant=s consent was the result of coercive
police tactics aimed at forcing appellant to consent to a search of his
residence. 








 First, the officers knew they could not obtain
a warrant to search appellant=s residence solely
based upon the anonymous tip because the tip, standing alone, did not establish
probable cause.  See State v. Steelman,
93 S.W.3d 102, 108 (Tex. Crim. App. 2002) (holding anonymous tip, that someone
at the residence was dealing drugs, did not amount to anything; the tip was
never substantiated, and none of the occupants were ever charged with drug
dealing); see also Elardo v. State, 163 S.W.3d 760, 768 (Tex.
App.CTexarkana 2005,
pet. filed) (A[A] mere anonymous tip, standing alone,
will not establish probable cause.  The
police can provide other indicia of reliability by independent corroboration of
the informant=s information.  However, corroboration of only innocent
details is usually insufficient.@ (citation and
footnotes omitted)); Parish v. State, 939 S.W.2d 201, 203 (Tex. App.CAustin 1997, no
pet.) (A[A]nonymously
provided information must contain some indicia of reliability or be >reasonably
corroborated= by police before it can be used to
justify a search.@). 
Here, the officers never made any attempt to corroborate the
information provided in the tip; the officers did not conduct surveillance of
the address or otherwise substantiate the tip. 
We also note that the tipster alleged an individual at appellant=s home address was
involved in the sale of large amounts of marihuana; appellant was not
charged with selling drugs but with possession.  Due to the inadequacy of the tip, the
officers= only lawful means
of a warrantless search of appellant=s residence was by
obtaining appellant=s consent, and it was apparent from the
moment the officers arrived that this was their goal.








Additionally, the anonymous tip did not
establish reasonable suspicion to justify the pat-down search of
appellant.  Alabama v. White, 496
U.S. 325, 330 (1990) (stating reasonable suspicion is dependent on both the
content of the information possessed by police and its degree of
reliability).  AAn anonymous
telephone call may justify the initiation of an investigation, but . . . alone,
it will rarely establish the level of suspicion required to justify a
detention.@  Johnson
v. State, 146 S.W.3d 719, 721 (Tex. App.CTexarkana 2004, no
pet.) (AReasonable
suspicion requires [an anonymous tip] be reliable in its assertion of
illegality, not just in its tendency to identify a determinate person.  When more information is available, however,
a police officer may reasonably conclude the tip is reliable, thus justifying
an investigatory detention.@ (citations
omitted)).  Savell explained he patted
appellant down for officer safety, based on his experience that people who are
suspected of dealing large amounts of narcotics often carry weapons.  However, there was no independent
corroboration of the tip to substantiate the presence of narcotics at the
residence nor any information indicating the tip had sufficient indicia of
reliability.  Consequently, the officer=s fear of weapons
was unfounded, and, thus, the subsequent pat-down search of appellant=s person was
unjustified.  This coercive tactic is
what led to the discovery of marihuana on appellant=s person, thereby
providing the officers with the requisite probable cause they needed to arrest
appellant.

The coercive nature of appellant=s consent is
further evidenced by the officers= failure to read
appellant his Miranda rights upon his arrest.  Whether police give a defendant Miranda
warnings is a factor relevant to consent. 
Gallups v. State, 104 S.W.3d 361, 366 (Tex. App.CDallas 2003), aff=d, 151 S.W.3d 196
(Tex. Crim. App. 2004).  Appellant was
under arrest when he was handcuffed and placed in the back of the patrol car
subsequent to the officer=s discovery of a small bag of marihuana on
his person during the unlawful pat-down search. 
See Tex. Code Crim. Proc.
Ann. art. 14.01(b) (Vernon 2005) (AA peace officer
may arrest an offender without a warrant for any offense committed in his
presence or within his view.@); Miranda,
384 U.S. at 444 (stating for Miranda rights to be necessary, a police
interrogation must be custodial; the questions must be asked after the suspect
has been taken into custody or otherwise deprived of freedom of action in a
significant way).  In their haste to
obtain appellant=s consent to search his residence, the
officers did not read appellant his Miranda rights when he was arrested
or before he gave written consent to search. 
The officers= failure to give appellant Miranda
warnings is a factor indicating appellant=s consent was the
product of duress and coercion.








Finally, in a last ditch effort to obtain
consent to search the house, and, while appellant was handcuffed in the back of
the patrol car, the officers told him that if he did not consent, his mother
and young son would be required to vacate the house while the officers secured
the residence, despite the officers having no basis for doing so.  After this threat was made, appellant spoke
to his mother; appellant then agreed to sign the written consent to search.  The officers= threats to remove
appellant=s family from the residence are what lead
appellant ultimately to consent to a search of his residence.  Such antagonistic action by the police
against a suspect=s family is a factor which significantly
undermines the voluntariness of any subsequent consent given by the
suspect.  See United States v. Ivy,
165 F.3d 397, 403B04 (6th Cir. 1998) (holding consent
invalid where defendant threatened by officer that everyone in the house would
go to jail if he did not sign consent form); United States v. Bolin, 514
F.2d 554, 560B61 (7th Cir. 1975) (holding consent
invalid where defendant signed consent form while undergoing custodial
interrogation and only after he had been impliedly threatened that his
girlfriend would be arrested if he did not sign).

Given the totality of the circumstances,
the State did not meet its burden of proving by clear and convincing evidence
that appellant=s consent was freely and voluntarily
given.  The coercive conduct surrounding
appellant=s consent leads to only one conclusion,
that appellant=s consent was involuntary and his will was
overcome.  Thus, appellant=s consent was
invalid.  Because the State has not
argued that the search was supported by probable cause and a warrant or any
other recognized exception to the warrant requirement, no other grounds to
legitimize the search may be upheld.  

We hold the trial court abused its
discretion in denying appellant=s motion to
suppress because appellant=s consent was
involuntary and the product of duress and coercion.  Thus, the search of appellant=s residence was
unreasonable under the Fourth Amendment, rendering the seized contraband the
inadmissible fruit of that unlawful activity. 


Accordingly, we sustain this part of point
one.  We need not address appellant=s alternative
argument that his consent was invalid because it was the product of
unattenuated illegal official acts.

Conclusion

We reverse and remand for further
proceedings consistent with this opinion.

 

 

 

/s/      John S. Anderson

Justice

 

Judgment
rendered and Opinion filed August 23, 2005.

 

Panel
consists of Justices Anderson, Frost, and Seymore.

 

PublishC Tex. R. App. P. 47.2(b).











[1]  At the time of
his plea, appellant had signed a written waiver of his right to appeal, and
this court initially dismissed his appeal. 
See Flores v. State, No. 14-02-00560-CR, 2002 WL 1899920 (Tex.
App.CHouston [14th Dist.] Aug. 15, 2002, no pet.) (not
designated for publication).  Appellant
then filed an application for writ of habeas corpus alleging his plea was
involuntary because he had been told that he could appeal the denial of the
motion to suppress and he would not have entered a guilty plea otherwise.  The Texas Court of Criminal Appeals granted
appellant=s request for habeas corpus relief.  See Ex parte Flores, No. 74778, 2003
WL 22348943 (Tex. Crim. App. Oct. 15, 2003) (not designated for publication). 





[2]  Upon being
cross-examined about the anonymous tip, Savell explained:

 

A[H]e had one anonymous tip in regards to this
residence the night prior to this incident. 
The same informant gave another tip which led to the arrest of a suspect
in over 50 burglaries in another case. 
So, it=s the same informant. 
So, this is an informant that I=ve used
in the past and he=s been reliable. 
. . .  It=s anonymous for the purpose of this report.  If you=ll read
in my report, it says on here that the persons providing the information wish
to remain anonymous, for reasons of personal safety.@





[3]  See Miranda
v. Arizona, 384 U.S. 436, 444B45
(1966).





[4]  Questions of
voluntariness and attenuation of taint are closely related; however, an
attenuation analysis is logically distinct from one involving only questions of
voluntariness.  Arcila v. State,
834 S.W.2d 357, 358B59 (Tex. Crim. App. 1992), overruled on other
grounds, Guzman v. State, 955 S.W.2d 85, 88B90 (Tex. Crim. App. 1997); Brick v. State, 738
S.W.2d 676, 680B81 (Tex. Crim. App. 1987).  





[5]  Appellant
details the coercive police procedures as follows:  the officers= refusal
to wait at the front door of appellant=s
residence for him and instead walking around to the back of the house; the
officers= detaining him in the backyard and requesting consent
to search, which appellant denied; the officers= search
and arrest of appellant after he denied consent to search; and the officers= threats to appellant that if he did not consent to a
search, his mother and young son would be detained and forced to wait outside
while the police searched the house.





[6]  In contrast,
the federal constitution requires consent to be proven by a preponderance of
the evidence.  See Maxwell, 73
S.W.3d at 281.  Because appellant
challenged the voluntariness of his consent under both the federal and Texas
constitutions, the State was required to show by clear and convincing evidence
that appellant=s consent was valid. 





[7]  The Schneckloth
Court developed the standard by which consent is tested for voluntariness.  389 U.S. at 226.  In determining whether a defendant=s will was overborne in a particular case, trial
courts are to assess Athe totality of all the surrounding
circumstances--both the characteristics of the accused and the details of the
interrogation.@  Id.