John Clifton JOHNSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 06–04–00027–CR.

Court of Appeals of Texas, Texarkana.

Submitted June 18, 2004.

Decided Sept. 9, 2004.

R. Scott Walker, Longview, for appellant.

Al Davis, Asst. Dist. Atty., Joe Black, Dist. Atty., Marshall, for appellee.

Before MORRISS, C.J., ROSS and GRANT,* JJ.

OPINION

Opinion by Justice BEN Z. GRANT (Retired).

John Clifton Johnson appeals from the trial court's ruling on his pretrial motion to suppress evidence. The trial court denied his motion and ruled the evidence would be

* Ben Z. Grant, Justice, Retired, Sitting by Assignment

admitted. Johnson thereafter pleaded guilty and received deferred adjudication on the charge of possession of a controlled substance.

Johnson contends the evidence should have been suppressed (1) because the police officer did not have reasonable suspicion to initiate a traffic stop and (2) because the officer did not have probable cause to search him without consent.

■ Where the facts of the case are undisputed and the trial court's ruling does not turn on the credibility of a witness, the Courts of Appeals review an order overruling a motion to suppress on a de novo basis. *See Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Crim.App.1997).

■ The first question is whether the officer had the authority to initiate an investigative detention. The officer testified he stopped the car based on an anonymous telephone call. The caller told police a black man, accompanied by two black females, driving a 1999 black Ford Taurus with a specified license plate number, was involved in possible drug activity at a specific apartment complex. The officer testified the apartment complex in question was known to be a place that regularly had "drug deals and drug activity" occurring. The officer reached that location less than a minute after the dispatcher relayed the information, and saw and stopped a car matching that description as the driver attempted to leave the parking lot of the complex. At that time, Johnson was in the car and was alone.

■ The first issue is whether there was sufficient information to justify the investigative detention. Law enforcement officers may stop and briefly detain persons suspected of criminal activity on less information than is constitutionally required for probable cause to arrest. *Terry v. Ohio,* 392 U.S. 1, 22, 88 S.Ct. 1868, 20

L.Ed.2d 889 (1968); *Pipkin v. State,* 114 S.W.3d 649, 653 (Tex.App.-Fort Worth 2003, no pet.). The information must provide officers with a "reasonable suspicion" of criminal activity, a concept which requires more than a mere hunch or suspicion. *Davis v. State,* 947 S.W.2d 240, 244 (Tex.Crim.App.1997). The reasonableness of a detention must be examined in terms of the totality of the circumstances. *Woods v. State,* 956 S.W.2d 33, 38 (Tex. Crim.App.1997).

■ A mere anonymous tip, standing alone, does not constitute probable cause. *State v. Steelman,* 93 S.W.3d 102, 108 (Tex. Crim.App.2002). An anonymous telephone call may justify the initiation of an investigation, but the court has held that, alone, it will rarely establish the level of suspicion required to justify a detention. *Alabama v. White,* 496 U.S. 325, 329, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990); *Stewart v. State,* 22 S.W.3d 646, 648 (Tex.App.-Austin 2000, pet. ref'd). The corroboration of the details which do not indicate criminal activity will not lend support to the anonymous tip. *See id.* Reasonable suspicion requires it be reliable in its assertion of illegality, not just in its tendency to identify a determinate person. *Florida v. J.L.,* 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000). When more information is available, however, a police officer may reasonably conclude the tip is reliable, thus justifying an investigatory detention. *Stewart,* 22 S.W.3d at 648.

In the present case, the officer summed up what he relied on at the time of the stop:

Q. So, your sole justification for this stop, the traffic stop, was the anonymous call; correct?

A. Yes, sir.

Q. Is there anything about the car being in a parking lot and driving out toward the exit that is suspicious?

A. No.

The officer testified the initial stop was solely justified by the anonymous tip and there was no corroboration at the time of the stop that indicated criminal activity. The fact that there had been drug activity in the area, but not known to have been committed by the defendant, is not sufficient to corroborate an anonymous tip.

This point is sustained.

■ Johnson's second point contends the trial court erred by denying his motion to suppress because the search was improper. After stopping the vehicle and talking to Johnson, and having detected the strong odor of marihuana coming from inside the vehicle, the officer conducted what is variously described as a "pat-down" or frisk. It is a fundamental principle that an officer can do a pat-down search for his or her own protection if the situation justifies. The officer testified that he patted Johnson down for his own safety. However, the officer later testified that his search was for more than just weapons: The officer testified as follows:

I[w]as patting him and searching him at the same time.... If I felt anything bulky in his pockets. I was trying to figure out what it was. I was making sure it was not a small pocket knife or a small caliber handgun or any illegal narcotics.

. . . .

Q. .... So every time you patted him down, there is no way that you could have thought that cocaine was a weapon? Being that small?

A. No, sir.

Q. So you patted him down and you were relatively certain that it wasn't a weapon? Isn't that correct?

A. Well, I was patting him and searching him at the same time.

Q. So as you patted him you realized that was not a weapon?

A. Yes, sir.

. . . .

Q. And at the time you felt his pocket and knew that there was something in there, before you actually stuck your hand in there, you still didn't know what it was; isn't that correct?

A. Correct.

Q. It could have been rock candy or anything in there; correct?

A. Yes, sir.

Q. So, it wasn't readily apparent to you that that was cocaine just by patting against his pants?

A. No, sir.

The officer testified that while patting Johnson down, he found no weapons, but did feel several small lumps in Johnson's front pocket that were later identified as six small crack cocaine rocks. The officer also admitted that before he took them out of Johnson's pocket, he was not sure what they were, but suspected because of the circumstances that they were drugs. He testified Johnson was extremely fidgety and nervous. The officer then arrested him.

■ If a search goes beyond what is necessary to determine whether the suspect is armed, then the fruits of that search are illegal and must be suppressed. *Carmouche v. State,* 10 S.W.3d 323, 330 (Tex.Crim.App.2000) (citing *Minnesota v. Dickerson,* 508 U.S. 366, 373, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993)); *see Hitchcock v. State,* 118 S.W.3d 844, 848 (Tex. App.-Texarkana 2003, no pet.).

■ There has long been an exception to this rule known as the "plain view doc-

trine." Another exception is "plain feel," on which the State relies in this case. This exception provides that when, during a lawful pat-down search, an officer feels an object whose contour or mass makes its identity immediately apparent, the fruit of the search is not illegal. *Dickerson*, 508 U.S. at 375, 113 S.Ct. 2130. In such cases, "no additional privacy interest is implicated by the seizure of an item whose identity is already plainly known through the officer's sense of touch." *Carmouche*, 10 S.W.3d at 330.

Johnson correctly contends, however, that because the officer admitted he could not identify the items through Johnson's pants pocket during the initial pat-down search for weapons, the plain-feel exception to the Fourth Amendment could not justify the officer's more invasive search.

There is, however, no reason why the officer could not make a simultaneous search for drugs if he had probable cause to search for drugs. At that point, the officer recognized Johnson as a person who had been involved with illegal drugs, and the car smelled of marihuana. It is a reasonable inference that Johnson may have been using or possessed marihuana, and he may have placed it on his person when he saw the police officer.

In the recent case of *Steelman*, the Texas Court of Criminal Appeals held that the mere odor of marihuana, standing alone, does not authorize a warrantless search and seizure in a home. *Steelman*, 93 S.W.3d at 108. In *Steelman*, there were four individuals in the home, and there was no indication that the person arrested had committed the crime. (See cases cited therein.) But in contrast to *Steelman*, in the present case there was only one person in the automobile when the officer smelled the marihuana. That fact, coupled with the determination after the stop that the car was being driven by Johnson, who the officer knew had been involved with illegal drugs for some time, gave the officer probable cause to search Johnson.

This point is overruled.

However, the illegality of the initial stop tainted any evidence that may have been seized as a result of that stop and made such evidence subject to suppression. *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *Crosby v. State*, 750 S.W.2d 768, 780 (Tex.Crim. App.1987); *Corbin v. State*, 91 S.W.3d 383, 385 (Tex.App.-Texarkana 2002, no pet.).

Having found constitutional error in the admission of the evidence in question, we must reverse the conviction unless we conclude beyond a reasonable doubt that the error made no contribution to the conviction or the punishment. TEX.R.APP. P. 44.2(a). In the instant case, the complained-of evidence includes the contraband found as a result of the search. As such, the error contributed to Johnson's conviction. *See McQuarters v. State*, 58 S.W.3d 250, 258 (Tex.App.-Fort Worth 2001, pet. ref'd).

Therefore, we reverse and remand the case to the trial court for further proceedings consistent with this opinion.