

**In The**
**Court of Appeals**
**Sixth Appellate District of Texas at Texarkana**

_____

No. 06-10-00188-CR

_____

THE STATE OF TEXAS, Appellant

V.

JAMIE LEA WILSON, Appellee

On Appeal from the 354th Judicial District Court
Hunt County, Texas
Trial Court No. 26057

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Carter

OPINION

The State appeals[1] the trial court's ruling granting a motion to suppress filed by Jamie Lea Wilson after her arrest for possession of methamphetamine in an amount of four or more but less than 200 grams. We affirm the trial court's ruling.

I.      FACTUAL AND PROCEDURAL HISTORY

Officer Stephen Brownlow was contacted "regarding a tip involving drug activity." Over the telephone, an informant revealed that "there would be a gold, Chevy Blazer expected eastbound on Highway 66 within 15 minutes of [when] we receive[d the] information, and there would be two females in the vehicle and that they would be carrying about four ounces of methamphetamine."

Brownlow located a gold Chevy Blazer and "followed it through town" for approximately five minutes. No traffic or other violation was committed. The vehicle pulled into the driveway of a private residence behind a local church and parked in front of another vehicle. Brownlow turned on the patrol car lights as the Blazer came to a stop. Jennifer Rossignol was driving the Blazer while carrying passenger Wilson. Brownlow testified that "when I stopped the vehicle, the driver got out" and "tried to walk over to the house. I told her to stop and come back to the vehicle." Rossignol's driver's license was expired.

[1]The State's appeal was made in accordance with our Code of Criminal Procedure, authorizing us to exercise jurisdiction. TEX. CODE CRIM. PROC. ANN. art. 44.01(a)(5) (Vernon Supp. 2010).

2

Brownlow testified Wilson "was reaching down -- she turned away from the patrol -- from us and our view, the front of her body was facing away, and she was digging down in her pants like this like she was either stuffing, reaching, or scratching something. So immediately suspicious." Fearing Wilson might have a weapon, Brownlow instructed her to "get her hands out of her pants." When she turned around, Brownlow observed "a cylindrical shaped object on the side of her leg." Prior to the commencement of a pat-down search, Wilson voluntarily retrieved methamphetamine from her pants. She was arrested for possession of methamphetamine.

## II.    STANDARD OF REVIEW

We review the trial court's decision to grant Wilson's motion to suppress evidence by applying a bifurcated standard of review. *Graves v. State*, 307 S.W.3d 483, 489 (Tex. App.—Texarkana 2010, pet. ref'd); *Rogers v. State*, 291 S.W.3d 148, 151 (Tex. App.—Texarkana 2009, pet. ref'd).

Because the trial court is the exclusive trier of fact and judge of witness credibility at a suppression hearing, we afford almost total deference to its determination of facts supported by the record. *State v. Ross*, 32 S.W.3d 853, 856–57 (Tex. Crim. App. 2000); *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We also afford such deference to a trial court's ruling on application of law to fact questions, also known as mixed questions of law and fact, if the resolution of those questions turns

on an evaluation of credibility and demeanor.  *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996).

While we defer to the trial court on its determination of historical facts and credibility, we review de novo its application of the law and determination on questions not turning on credibility. *Carmouche*, 10 S.W.3d at 332; *Guzman*, 955 S.W.2d at 89; *Graves*, 307 S.W.3d at 489.   Since all evidence is viewed in the light most favorable to the trial court's ruling, we are obligated to uphold the granting of Wilson's motion to suppress if it was supported by the record and was correct under any theory of law applicable to the case.  *Carmouche*, 10 S.W.3d at 328; *State v. Ballard*, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999).

## III.    ANALYSIS

### A.    Burden of Proof

When a defendant seeks to suppress evidence on the basis of an illegal search or seizure, the burden of proof is placed initially upon the defendant.  *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).  A defendant meets the initial burden of proof by establishing that a search or seizure occurred without a warrant, shifting the burden of proof to the State.  *Id.*   If the State is unable to produce evidence of a warrant, it must prove the reasonableness of the search or seizure.  *Id.*   Here, the suppression hearing began with the State stipulating this case involved a warrantless arrest.   This stipulation shifted the burden of proof to the State.  *See id.*

4

### B. Brownlow's Seizure of Wilson Was an Investigative Detention

The Texas Court of Criminal Appeals recognizes three categories of interactions between police officers and citizens: arrests, investigative detentions, and encounters. *State v. Perez*, 85 S.W.3d 817, 819 (Tex. Crim. App. 2002). Citing *State v. Priddy*, the State argues that Brownlow's interaction with Wilson was an encounter which did not require probable cause or reasonable suspicion. 321 S.W.3d 82, 87 (Tex. App.—Fort Worth 2010, pet. ref'd). In *Priddy*, our sister court correctly stated that during encounters, "[l]aw enforcement officers are permitted to approach individuals without probable cause or reasonable suspicion" because although "[s]uch interactions may involve inconvenience or embarrassment . . . they do not involve official coercion." *Id.* (citing *Florida v. Royer*, 460 U.S. 491, 497–98 (1983); *State v. Garcia-Cantu*, 253 S.W.3d 236, 243 (Tex. Crim. App. 2008); *State v. Velasquez*, 994 S.W.2d 676, 678 (Tex. Crim. App. 1999)).

The lack of requirement for probable cause or reasonable suspicion is premised on the theory that "[u]nlike an investigative detention or an arrest--each a seizure for Fourth Amendment purposes--an encounter is a consensual interaction, which the citizen may terminate at any time." *Id.* at 86 (citing *Gurrola v. State*, 877 S.W.2d 300, 302–03 (Tex. Crim. App. 1994)). "So long as the citizen remains free to disregard the officer's questions and go about his or her business, the encounter is consensual and merits no further constitutional analysis." *Id.* (citing *California v. Hodari D.*, 499 U.S. 621, 628 (1991); *Johnson v. State*, 912 S.W.2d 227, 235 (Tex. Crim. App.

5

1995)). The test also has been stated that "in order to determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." *Florida v. Bostick*, 501 U.S. 429, 439 (1991).

The facts of this case do not indicate a consensual encounter. Brownlow had been driving behind the Blazer for approximately five minutes before he followed it into the driveway of a private residence. He turned on his patrol car lights as the vehicle came to a stop. When the driver of the vehicle exited the Blazer and began walking toward the house, Brownlow "told her to stop and come back to the vehicle." This command, by the uniformed officer given after initiation of patrol car lights, would communicate to reasonable persons that they were not free to decline the officer's requests or otherwise terminate the encounter. Therefore, Brownlow's seizure of Wilson implicated Fourth Amendment protections.

### C. Reasonable Suspicion Was Required

The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. CONST. amend. IV. This prohibition extends to "brief investigatory stops such as the stop of [a] vehicle." *United States v. Cortez*, 449 U.S. 411, 417 (1981); *see Corbin v. State*, 85 S.W.3d 272, 276 (Tex. Crim. App. 2002).

6

Law enforcement officers may stop and briefly detain persons suspected of criminal activity on less information than is constitutionally required for probable cause to arrest. *Terry v. Ohio*, 392 U.S. 1, 22 (1968). To initiate an investigative stop, the officer must possess a reasonable suspicion based on specific, articulable facts that in light of the officer's experience and general knowledge, would lead the officer to the reasonable conclusion that criminal activity is underway and the detained person is connected to the activity. *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001). Such a stop must be objectively reasonable in light of the particular circumstances of the case. *Maryland v. Wilson*, 519 U.S. 408, 411 (1997); *Terry*, 392 U.S. at 21–22; *Corbin*, 85 S.W.3d at 276. Reasonableness depends on "a balance between the public interest and the individual's right to personal security free from arbitrary interference by law enforcement." *Corbin*, 85 S.W.3d at 276 (quoting *Wilson*, 519 U.S. at 411).

### D. The Investigative Detention Without Reasonable Suspicion Was Unreasonable

#### 1. *The Anonymous Tip*

An investigative stop need not be based on personal observation, but may be based on an informant's tip that bears sufficient "indicia of reliability" to justify a stop. *See Adams v. Williams*, 407 U.S. 143, 147 (1972). The State argues Brownlow's detention was reasonable given the informant's tip.

An anonymous telephone call rarely will, standing alone, establish the requisite level of reasonable suspicion because "an anonymous tip alone seldom demonstrates the informant's basis

7

of knowledge or veracity." *Gilmore v. State*, 323 S.W.3d 250, 258 (Tex. App.—Texarkana 2010, pet. ref'd) (citing *Alabama v. White*, 496 U.S. 325, 329 (1990); *Florida v. J.L.*, 529 U.S. 266, 270 (2000)).

After a hearing, the trial court granted the motion to suppress the evidence found as a result of the search. The trial court was in the best position to observe and determine the reasonableness and credibility of the testimony. When the trial court makes no specific findings of historical fact, we presume it made those findings necessary to support its ruling, provided they find support in the record. *Carmouche*, 10 S.W.3d at 327–28. The evidence appears to support the trial court's implicit conclusion that the informant's information was, in the inception, classified as an anonymous tip.

Brownlow originally stated in his report that the informant was anonymous, but at the suppression hearing, he testified that the informant was a confidential informant whom Brownlow knew at the time he was contacted. Later, Brownlow qualified that account and stated that the informant was identified "[w]hen the report was done." When later questioned by the trial judge, Brownlow stated that he did not know the informant, and the reliability of the informant could only be established by corroboration of information.[2] No attempt was made to present evidence that the informant had given other reliable information in the past.

---

[2]Brownlow later divulged the informant's identity as Wilson's boyfriend, Jacob Donahue. As set forth below, the record is unclear whether the informant's identity was known at the time of the telephone call, or was deciphered at a later date:

8

## 2.    *Corroboration of the Tip*

To provide reasonable suspicion for an investigative detention, an anonymous tip must be "suitably corroborated or otherwise exhibiting sufficient indicia of reliability." *Gilmore*, 323 S.W.3d at 258 (citing *J.L.*, 529 U.S. at 270).   Police can provide other indicia of reliability by independent corroboration of the informant's information.   *Id.* (citing *Illinois v. Gates*, 462 U.S. 213, 236 (1983); *Cassias v. State*, 719 S.W.2d 585, 590 (Tex. Crim. App. 1986) (op. on reh'g)).

---

Q.    . . . you actually spoke with the informant, and his name was Jacob Donahue; is that correct?

A.    Correct.

Q.    Mr. Donahue is obviously identified or was identified at the time; is that correct?

A.    Yes.

Q.    And you thought he was credible; is that correct?

A.    Yes.

Q.    Did he relay information to you concerning the fact that his girlfriend, Jamie Lea Wilson, was engaged in drug activity?

A.    Yes.

. . . .

Q.    The - and part of that also the - the informant, that you originally listed as anonymous because you didn't want to disclose the person -

A.    Yes.

Q.    - for h[is] safety reasons -

A.    Yes.

Q.    But, actually, it was just uniden [sic] - it was just actually at the time was not disclosed.

A.    That's correct.

Q.    Let me refer to that for the record.   He was disclosed and you knew who he was at the time.   Right?

A.    Yes.   When the report was done.

Q.    It just stated he was anonymous and a supplement clarified that; is that correct?

A.    Correct.

This testimony gave rise to the court's questioning of Brownlow in which he stated he did not know Donahue.   Based on this record, the trial court could have found Donahue was anonymous at the time of the call, except for his identification as Wilson's boyfriend.   In any event, the State does not argue that Donahue was a named informant, but argues the information from the informant was corroborated by Wilson's suspicious behavior.

9

Brownlow claimed he found Donahue's tip reliable because "he was her boyfriend so I guess he had intimate knowledge of [Wilson's] activities. He knew exactly what road she was on, knew what time frame, . . . . He knew there'd be two females in the vehicle. It was a gold Chevy Blazer, which are pretty rare." In general, corroboration of mere innocent details is insufficient to corroborate an anonymous tip. *Id.* Brownlow's independent corroboration must establish that the anonymous tip is "reliable in its assertion of illegality, not just in its tendency to identify a determinate person." *Id.* (quoting *J.L.*, 529 U.S. at 271). "[T]he corroboration of details that are easily obtainable at the time the information is provided, and which do not indicate criminal activity, will not lend support to the tip." *Id.* at 258–59. The trial court could conclude that the testimony recited above only established corroboration of innocent details.

This case is remarkably similar to the facts of *Smith v. State*, 58 S.W.3d 784 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd). In *Smith*, police received a tip from Smith's girlfriend[3] that Smith would have heroin in his vehicle northbound on Highway 6 between 6:00 and 8:00 p.m. She described the vehicle, license number, and explained Smith would have two passengers. Shortly after 6:00, Smith was in the vehicle and place as described with two passengers; he was stopped and heroin was found. Even though the informant had given information in the past, it could not be verified that it was reliable. The court thought it was relevant that the informant had not explained the reason for turning in this information on her boyfriend or whether she could have an ulterior motive. *Id.* at 791.

_____

[3]The girlfriend had previously given the police "information."

10

As in this case, the State argued that the tip had been corroborated, but the Fourteenth Court held that the corroboration was of easily obtainable details and did not furnish a basis for reasonable suspicion. *Id*. at 792 (citing *Garcia v. State*, 3 S.W.3d 227, 235 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (accurate description of subject's location and appearance is reliable in identifying person accused, but does not show tipster has knowledge of concealed criminal activity)). We recited in *Gilmore* that an innocent detail may corroborate an anonymous tip when the tip correctly predicts future movements of the suspect if the travel involves unusual itineraries. *Gilmore*, 323 S.W.3d 259. When the travel itinerary is more commonplace, knowledge of a suspect's travel plans may not be sufficient. *Id.* (citing *Smith*, 58 S.W.3d at 793) (finding no reasonable suspicion for various reasons, including that travel was down "well traveled corridor"). There is no testimony that the highway route taken by Rossignol and Wilson was unusual.

However, the State argues that the following transcript established corroboration of travel plans:

> Q. In the -- in the time that you were going to go try to investigate Ms. Wilson traveling with narcotics, there was further conversation between Mr. Donahue and Ms. Wilson in regard to trying to get her to go and stop and get a hamburger and try to slow her down a little bit; is that right?
>
> A. Correct.
>
> Q. And she actually did that; is that right?
>
> A. Correct.

11

Q. And she had food there, including a hamburger, when you actually made the stop of the vehicle.

A. Yeah. Ms. Rossignol was eating a Sonic burger. I told her to go back to the vehicle and she started eating a Sonic burger.

There is no indication that the burger belonged to Wilson or that Rossignol and Wilson had in fact stopped at Sonic after Donahue's tip.

Moreover, "[w]e look only at the facts known to the officer at the inception of the stop; an initially unlawful stop is not validated by the discovery of criminal activity. *Tanner v. State*, 228 S.W.3d 852, 855 (Tex. App.—Austin 2007, no pet.) (citing *Wong Sun v. United States*, 371 U.S. 471, 484 (1963). Because Brownlow did not discover the existence of the burger until after initiation of the investigative detention, this information could not be used to corroborate the tip. Similarly, we disregard evidence cited by the State regarding Wilson's mannerisms after the detention, as well as Brownlow's testimony that Donahue's tip was corroborated because he knew "the exact amount of drugs she was carrying."

Viewing the evidence in the light most favorable to the trial court's ruling, we give deference to the trial court's fact-finding that the anonymous tip by Donahue was not sufficiently corroborated prior to initiation of the investigative detention.

*3. Other Evidence of Reasonable Suspicion*

Brownlow testified that the residence "had been abandoned – or unoccupied for some time," and was a "frequent[] target[] of burglary and theft." During cross-examination,

Brownlow admitted that he had no knowledge of whether the house was currently occupied, and we have stated before that "[t]he fact that there had been [criminal] activity in the area, but not known to have been committed by the defendant, is not sufficient to corroborate an anonymous tip." *Johnson v. State*, 146 S.W.3d 719, 722 (Tex. App.—Texarkana 2004, no pet.).

After reviewing the record, we conclude deference is warranted to the trial court's determination that the State failed to meet its burden of proof to demonstrate Brownlow had reasonable suspicion prior to initiation of the investigative detention.

## IV.    CONCLUSION

We affirm the trial court's judgment.


                                        Jack   Carter
                                        Justice


Date Submitted:      March 9, 2011
Date Decided:        March 18, 2011

Publish

13