PD-00208-CR, PD-00209-CR
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 3/23/2015 2:37:31 PM
Accepted 3/25/2015 1:45:42 PM
ABEL ACOSTA
CLERK

**NOS. PD-00208-15 & PD-00209-15**

**IN THE
COURT OF CRIMINAL APPEALS
OF TEXAS
AT AUSTIN**

FILED IN
COURT OF CRIMINAL APPEALS

March 25, 2015

ABEL ACOSTA, CLERK

**JARQUIS D. JACKSON,
Petitioner/Appellee**

**v.**

**THE STATE OF TEXAS,
Respondent/Appellant**

*On Appeal in Cause Nos. MB13-62072 & MB13-62071
from the County Criminal Court No. 3
Of Dallas County, Texas
And on Petition for Discretionary Review
from the Fifth District of Texas at Dallas
In Cause Nos. 05-14-00278-CR & 05-14-00279-CR*

**APPELLEE'S PETITION FOR DISCRETIONARY REVIEW**

*Counsel of Record:*

**Lynn Richardson**
**Chief Public Defender**

**Katherine A. Drew**
**Chief, Appellate Division**

**Loren M. Collins**
**Assistant Public Defender**

**Kathleen A. Walsh**
**Assistant Public Defender**
State Bar Number: 20802200
133 N. Riverfront Blvd., LB 2
Dallas, Texas 75207-399
(214) 653-3550 (*telephone*)
(214) 653-3539 (*fax*)
kwalsh@dallascounty.org

# LIST OF PARTIES

**TRIAL COURT JUDGE**
Doug Kemp, Presiding Judge

**APPELLEE**
Jarquis D. Jackson

**APPELLEE'S ATTORNEYS**
**AT TRIAL**
Loren M. Collins, State Bar No. 24077823
Assistant Public Defender

**ON APPEAL**
Kathleen A. Walsh, State Bar No. 20802200
Loren M. Collins, State Bar No. 24077823

Assistant Public Defenders
Dallas County Public Defender's Office
133 N. Riverfront Blvd., LB 2
Dallas, Texas  75207-4399

**STATE'S ATTORNEYS**
**AT TRIAL**
Annish Ashley, State Bar No. 24087120
Chris Johnson, State Bar No. 24063939

**ON APPEAL**
Brian P. Higginbotham, State Bar No. 24078665

Assistant District Attorneys
Dallas County District Attorney's Office
Frank Crowley Courts Building
133 N. Riverfront Blvd., LB-19
Dallas, Texas  75207-4399

# TABLE OF CONTENTS

INDEX OF AUTHORITIES..................................................................................iv

STATEMENT REGARDING ORAL ARGUMENT ..............................................1

STATEMENT OF THE CASE..............................................................................1

STATEMENT OF THE PROCEDURAL HISTORY OF THE CASE ....................1

GROUNDS FOR REVIEW ..................................................................................2

## GROUND FOR REVIEW NO. 1

*The Court of Appeals' decision reversing the trial court's order granting Petitioner's motion to suppress evidence conflicts with the decisions of the U.S. Supreme Court because the decision permits an investigative detention based on an anonymous tip where the tipster did not claim personal knowledge of the alleged illegality and provided no predictive information.*

## GROUND FOR REVIEW NO. 2

*The Court of Appeals' decision reversing the trial court's order granting Petitioner's motion to suppress evidence conflicts with the decisions of this Court because the decision permits an investigative detention based on an anonymous tip where the tipster did not claim personal knowledge of the alleged illegality and provided no predictive information.*

## GROUND FOR REVIEW NO. 3

*The Court of Appeals' decision reversing the trial court's order granting Petitioner's motion to suppress evidence conflicts with the decisions of other Texas courts of appeals because the decision permits an investigative detention based on an anonymous tip where the tipster did not claim personal knowledge of the alleged illegality and provided no predictive information.*

ARGUMENT ........................................................................................3

    Pertinent Facts ............................................................................3

    Anonymous tips and reasonable suspicion.....................................4

    The Dallas Court's determination that the anonymous tip in this case
    contained the same indicia of reliability to provide officers with reasonable
    suspicion to believe criminal activity was afoot is in conflict with the
    decision in Navarette; the anonymous tip, and information known to the
    officers at the time of the investigative detention, is nearly identical to the tip
    and circumstances found to be insufficient by the Supreme Court in J.L, and
    its progeny.. ..................................................................................9

    Other federal and state courts interpreting the holding in Navarette also
    demonstrate the conflict between the Dallas Court's opinion and the
    Supreme Court's opinion ............................................................11

    Conclusion ...............................................................................13

PRAYER FOR RELIEF ......................................................................15

CERTIFICATE OF SERVICE .............................................................16

CERTIFICATE OF COMPLIANCE......................................................16

APPENDIX

# INDEX OF AUTHORITIES

**Cases**

*Alabama v. White*,
496 U.S. 326 (1990) ................................................................. 4, 5, 13

*Davis v. State*,
144 S.W.3d 192 (Tex. App.—Fort Worth 2004, pet. ref'd.) ........................... 6

*Davis v. State*,
989 S.W.2d 859 (Tex. App.—Austin 1999, pet. ref'd.) ................................. 6

*Florida* v. *J.L.*,
529 U.S. 266 (2000) ........................................................... 6, 7, 10, 13

*Jackson v. State*,
Nos. 05-14-00278-CR, 05-14-00279-CR, 2015 Tex. App. LEXIS 507
(Tex. App.—Dallas January 21, 2015) (not designated for publication) .... 1, 9

*Johnson v. State*,
146 S.W.3d 719 (Tex. App.—Texarkana 2004, no pet.) ................................ 8

*Martinez v. State*,
348 S.W.3d 919 (Tex. Crim. App. 2011) ............................................... 8

*Matthews v. State*,
431 S.W.3d 596 (Tex. Crim. App. 2014) ............................................... 1

*Navarette v. California*,
134 S.Ct. 1683 (2014) ......................................................... passim

*State v. Braziel*,
No. A13-1183, 2014 Min.. App. Unpub. LEXIS 576 (Minn. Ct. App.
June 9, 2014, review denied) (not designated for publication) ..................... 13

*State v. Gates*,
145 So.3d 288 (La. 2014) ............................................................ 12

*State v. McPeak*,
No. 40892, 2014 Ida. App. Unpub. LEXIS 264 (Idaho Ct. App. June 11,
2014, no pet. h.) (not designated for publication) ................................ 12

*Stewart v. State*,
22 S.W.3d 646 (Tex. App.—Austin 2000, pet. ref'd.) ................................. 6

*United States v. Robinson*,
   No. 3:14-CR-28, 2014 U.S. Dist. LEXIS 112383 (N.D. W.Va. August 14,
   2014, no pet. h.) (not designated for publication)........................................... 12

**Statutes**

TEX. CODE CRIM. PROC. art. 44.01 (a) (5)........................................................... 1

TEX. PENAL CODE § 46.02...................................................................... 11

TEX. PENAL CODE § 46.15(b)(2) ....................................................... 11

**Rules**

TEX. R. APP. P. 66.3(b).................................................................. 13

**TO THE HONORABLE COURT OF CRIMINAL APPEALS:**

**COMES NOW** Jarquis D. Jackson, Petitioner herein and Appellee before the Court of Appeals, and respectfully submits this Petition for Discretionary Review.

## STATEMENT REGARDING ORAL ARGUMENT

Appellee requests oral argument because this case presents a question of law on an issue having statewide impact and possible reoccurrence. Oral argument may be helpful to the members of this Court in the resolution of the issue presented.

## STATEMENT OF THE CASE

Appellee was charged by affidavit and information with the offenses of unlawfully carrying of a weapon and possession of marijuana in an amount of two ounces or less. (CR: 9, 10; CR1: 8, 9).[1] The trial court granted Appellee's motion to suppress. (CR: 15; CR1:  39; RR: 55-57. 62-63). The State appealed pursuant to TEX. CODE CRIM. PROC. art. 44.01 (a) (5). (CR: 6-7; CR1: 6-7).

## STATEMENT OF THE PROCEDURAL HISTORY OF THE CASE

On January 21, 2015, in an unpublished opinion, the Court of Appeals for the Fifth District of Texas reversed the trial court's order granting the motion to suppress. *Jackson v. State*, Nos. 05-14-00278-CR, 05-14-00279-CR, 2015 Tex.

---

[1] For purposes of this brief, the Clerk's Record in Cause No. MA13-62072 shall be designated as "CR;" the Clerk's Record in Cause No. MA13-62071 shall be designated as "CR1."

App. LEXIS 507 (Tex. App.—Dallas January 21, 2015) (not designated for publication). (*See Appendix*). No motion for rehearing was filed. This Petition is timely if filed on or before March 23, 2015.[2]

## GROUND FOR REVIEW NO. 1

*The Court of Appeals' decision reversing the trial court's order granting Petitioner's motion to suppress evidence conflicts with the decisions of the U.S. Supreme Court because the decision permits an investigative detention based on an anonymous tip where the tipster did not claim personal knowledge of the alleged illegality and provided no predictive information.*

## GROUND FOR REVIEW NO. 2

*The Court of Appeals' decision reversing the trial court's order granting Petitioner's motion to suppress evidence conflicts with the decisions of this Court because the decision permits an investigative detention based on an anonymous tip where the tipster did not claim personal knowledge of the alleged illegality and provided no predictive information.*

## GROUND FOR REVIEW NO. 3

*The Court of Appeals' decision reversing the trial court's order granting Petitioner's motion to suppress evidence conflicts with the decisions of other Texas courts of appeals because the decision permits an investigative detention based on an anonymous tip where the tipster did not claim personal knowledge of the alleged illegality and provided no predictive information.*

---

[2] On February 26, 2015, this Court granted the Appellant's motion for an extension of time.

2

# ARGUMENT

*Pertinent Facts.*

On September 2, 2013, Dallas police officers were dispatched to the parking lot of a gas station in Dallas. (RR: 7, 9, 17, 21-22, 24, 30, 37-38). Three officers responded to the call. (RR: 7, 22, 37-38). The call notes from dispatch were based on a 911 call from an anonymous tipster; the officers did not know any information about the caller other than a cell phone number. (RR: 20-21, 43, 57).

As they made their way to the scene, the officer's call sheet indicated that the tipster had alleged that a black male wearing a white t-shirt had a gun. (RR: 7, 9, 14, 32, 38). Officer Thomas testified that the officers' "collective understanding" was that there was "a man with a gun" at the gas station. (RR: 31-32). Both Officers Thomas and Crawford stated that the call notes indicated that the suspect had not pointed the gun or waved the gun at anyone. (RR: 32, 50). The notes additionally stated that the man with the gun had gotten into a black Honda with no front license plate, and that two other black males wearing white t-shirts were also present in or around the vehicle. (RR: 16). The call notes also stated that the vehicle had blue headlights and the lights were flashing. (RR: 7-8, 38-39). The notes did not provide any information as to which black male wearing a white t-shirt had a gun. (RR: 16). The three officers testified that the area of town is in a

high crime area, but also that the gas station was open and is frequented by many patrons during late night hours. (RR: 9, 30, 40).

Upon arriving at the gas station, the officers saw a black Honda backed into a parking spot in front of the gas station and it was flashing its lights. (RR: 8, 22, 38, 40). Additionally, the officers saw that the Honda had blue headlights and no front license plate, just as the call notes had alleged. (RR: 18). The officers exited their vehicles and approached the black Honda. (RR: 17). The vehicle started moving and the officers used hand gestures and "yelled stop". (RR: 17, 39). In response to the officers' show of authority, the vehicle stopped. (RR: 18, 23-24, 39, 48). During the investigative detention, the police found a handgun underneath the passenger seat of the vehicle and some marijuana on Appellee's person. (RR: 12, 26-27, 41-42).

### *Anonymous tips and reasonable suspicion.*

Under the Fourth Amendment, an investigatory detention must be justified by reasonable suspicion. *Matthews v. State*, 431 S.W.3d 596, 603-04 (Tex. Crim. App. 2014). Whether reasonable suspicion exists, "…depends upon both the content of information possessed by police and its degree of reliability." *Navarette v. California*, 134 S. Ct. 1683, 1687 (2014)(*citing Alabama v. White*, 496 U.S. 325, 330 (1990).

4

An anonymous tipster's information may form *part* of the basis of an investigative detention. However, by definition, an anonymous tipster's reliability is "largely unknown, and unknowable." *Id*. (*quoting White*, 496 U.S. at 329). Therefore, "an anonymous tip seldom demonstrates the informant's basis of knowledge or veracity" standing alone. *White,* 496 U.S. at 329.

Because an anonymous tipster's reliability is unknown, the Supreme Court has discussed two main ways in which an anonymous tip may be proved reliable, and thus justify an investigative detention. In *Alabama v. White*, an anonymous tip provided information about a specific person driving a specific vehicle who was alleged to be transporting illegal drugs. Additionally, the tip provided information that predicted the suspects future movements. Once that predictive information was corroborated by the officer's surveillance of the suspect, "the tipster demonstrated a special familiarity with [the suspect's] affairs, which in turn implied that the tipster had access to reliable information about that individual's illegal activities." *Navarette*, 134 S. Ct. at 1687 (*citing White*, 496 U.S. at 332). Thus, the specific details contained in the tip, plus the corroboration of the predictive behavior contained within the tip, supplied the reliability needed to find that reasonable suspicion existed.

Alternatively, an anonymous tip may be proved reliable when the tipster provides information that necessarily implies that the tipster has personal

5

knowledge of the alleged illegal conduct, and makes a "contemporaneous report" to police of the alleged illegal conduct. *Navarette*, 134 S. Ct. at 1689. In *Navarette*, the tipster alleged "she had been run off the road by a specific vehicle", and she made that report immediately after it happened. *Id*. Thus, the combination of personal knowledge of the illegality, together with the contemporaneous report, supplied the reliability needed to show that reasonable suspicion existed.

In contrast, an anonymous tip that does not indicate that it was based on personal knowledge, is not made contemporaneously with the alleged illegal activity, and provides no predictive information, will not be deemed sufficient to prove reliable to establish reasonable suspicion absent corroboration of criminal activity by the investigating officers. Corroboration of mere innocent details is insufficient to corroborate an anonymous tip. *Davis v. State*, 144 S.W.3d 192, 199-200 (Tex. App.—Fort Worth 2004, pet. ref'd.). The independent corroboration by the investigating officers must establish that the tip is 'reliable in its assertion of illegality, not just in its tendency to identify a determinate person." *Florida v. J.L.*, 529 U.S. 266, 271-272 (2000). "[T]he corroboration of details that are easily obtainable at the time the information is provided, and which do not indicate criminal activity, will not lend support to the tip." *Stewart v. State*, 22 S.W.3d 646, 648 (Tex. App.—Austin 2000, pet. ref'd.); *Davis*, 989 S.W.2d 859, 863 (Tex. App.—Austin 1999, pet. ref'd.); *see also J.L.*, 529 U.S. at 272.

6

In *J.L.*, an anonymous caller reported to the police that a young black male standing at a particular bus stop and wearing a plaid shirt was carrying a gun. The police arrived at the bus stop about six minutes later and saw three black males hanging out there. One of three, J.L., was wearing a plaid shirt. Apart from the tip, the officers had no reason to suspect any of the three of illegal conduct; the officers did not see a firearm, nor did J.L. make any threatening or otherwise unusual movements. One of the officers frisked J.L. and seized a gun from his pocket. *J.L.*, 529 U.S. at 268. The Supreme Court held that the tip was insufficient to establish reasonable suspicion. *Id.* at 271-72.

Texas courts have followed the Supreme Court's decision in *J.L.*, examining whether a tip is too barebones to support reasonable suspicion. In *Martinez,* an anonymous tipster reported that a male driving a blue Ford pickup truck stopped at the intersection of 17th and Main Street, put two bicycles into the bed of his truck, and left the area going west. An officer on patrol in the area stopped a Ford F-250 truck that "looked like it was blue" approximately three-quarters of a mile from the reported incident that the officer considered to be a report concerning the theft of bicycles. As the officer walked to the driver's side of the truck, he noticed two bicycles in the truck bed that had not been visible to him until he approached the truck. After the officer was informed by dispatch that there were no complaints of stolen bicycles from that location, he asked dispatch if the caller could come to the

7

scene; the caller arrived and confirmed that the officer had pulled over the same truck that had picked up the two bicycles. *Martinez v. State*, 348 S.W.3d 919, 922 (Tex. Crim. App. 2011). This Court found the anonymous tip insufficient to permit an investigative detention because the anonymous caller did not report contextual factors that reasonably connected the activity to a theft, such as witnessing the suspect use bolt cutters to cut a bike lock or stating that the bikes were taken from someone's garage *Id.* at 924-26.

In *Johnson*, the Sixth District Court of Appeals reviewed the legality of the investigative detention following an anonymous tip which indicated that a black man, accompanied by two black females, driving a 1999 black Ford Taurus with a specified license plate number, was involved in possible drug activity at a specific apartment complex. The officer testified the apartment complex in question was known to be a place that regularly had drug deals and drug activity occurring. The officer reached that location less than a minute after the dispatcher relayed the information, and saw and stopped a car matching that description as the driver attempted to leave the parking lot of the complex. *Johnson v. State*, 146 S.W.3d 719, 721 (Tex. App.—Texarkana 2004, no pet.). The Texarkana Court found the tip insufficient to permit an investigative detention because the caller was anonymous and "there was no corroboration at the time of the stop that indicated criminal activity." *Id.* at 722.

***The Dallas Court's determination that the anonymous tip in this case contained the same indicia of reliability to provide officers with reasonable suspicion to believe criminal activity was afoot is in conflict with the decision in Navarette; the anonymous tip, and information known to the officers at the time of the investigative detention, is nearly identical to the tip, and circumstances found to be insufficient by the Supreme Court in J.L., and its progeny.***

In its opinion, the Dallas court of appeals likened the tip in this case to the tip in *Navarette,* stating:

> As in *Navarette*, the tip was an eyewitness account of a potentially dangerous situation, was made contemporaneously with the event, and was made through the 911 system. As found by the trial court, the tipster called 911 in the early morning hours and reported a man was publicly "displaying" a gun on the parking lot of a gas station. The gas station was open for business and was located near a nightclub in a high-crime area. As officers went to the scene, the tipster stayed on the line with the 911 dispatch and provided other information in real time. The tipster gave information on the man's attire and location as well as specific details on his vehicle, such as make, color, the lack of a front license plate, blue flashing headlights and how the car was parked. Police verified these details before making the stop.

*Jackson*, 2015 Tex. App. LEXIS 507 at *7.

The Dallas Court's reliance on the holding in *Navarette* is misplaced. There is no doubt from the tip in *Navarette* that it is based on personal knowledge of very recent criminal activity, as the allegation in the 911 call makes it clear that the tipster herself is the victim of the criminal activity she is reporting, and that such criminal activity occurred within the last five minutes of the tipster making the call. In stark contrast, and contrary to the Dallas Court's opinion, there is nothing

9

in the tip in this case that shows it "was an eyewitness account" and "was made contemporaneously with the event."

The tip in this case is virtually identical to the tip found to be insufficient in *J.L.* In *Navarette*, the Supreme Court specifically distinguished its holding in *J.L.*, restating the rule that because "the tipster did not explain how he knew about the gun, nor did he suggest that he had any special familiarity with the young man's affairs," the police "had no basis for believing 'that the tipster ha[d] knowledge of concealed criminal activity. *Navarette*, 134 S. Ct. at 1688 (quoting *J.L.*, 529 U.S. at 271-72). The Dallas Court is correct in stating that the tipster gave a description of the man's attire and location, as well as specific details about the car, however, these facts do no more than allow the officers to correctly identify the person whom the tipster means to accuse; these facts do not show that the tipster has knowledge of concealed criminal activity. *See J.L*, 529 U.S. at 272.

Furthermore, even if the tipster's failure to explain how he knew about the gun can somehow be ignored in this case, there is a question as to whether the tip can even be considered a report of criminal activity. "Even a reliable tip will justify an investigative stop only if it creates reasonable suspicion that 'criminal activity may be afoot." *Navarette*, 134 S. Ct. at 1689. Although the Dallas Court characterizes the tip as a report of a man "displaying" a gun in the parking lot, two of the responding officers testified during the hearing that the 911 call notes

10

indicated that the suspect had not pointed the gun or waved the gun at anyone. The Texas Penal Code allows an individual to carry a handgun when: (1) the person is on his property or on property under his control; (2) the person is walking directly to his car or a car under his control; or (3) the person has a license to carry a concealed weapon. TEX. PENAL CODE §§ 46.02; 46.15(b)(2). Based upon the tip given, the responding officers had no way of knowing whether Appellee met one of the exceptions to the general prohibition against carrying a handgun before they detained him. Furthermore, there is no evidence that the officers observed any illegal activity by Appellee or anyone else when they arrived at the gas station. Indeed, the gun was not even found on Appellee's person, but was found in Appellee's car under a seat only after the officers had pulled the three black males from the car because the three men all happened to be wearing a white t-shirt, as described by the tipster as the clothing worn by the man carrying the gun.

***Other federal and state courts interpreting the holding in Navarette also demonstrate the conflict between the Dallas Court's opinion and the Supreme Court's opinion.***

There is a paucity of case law construing *Navarette* in the Texas state courts. However, other courts' interpretations demonstrate the conflict between the Dallas Court's opinion in this case, and the Supreme Court's opinion in *Navarette*. Courts which have examined this issue in light of *Navarette* have uniformly examined whether the tip: (1) necessarily claimed personal knowledge of the alleged criminal

11

activity, and (2) whether the tip was made contemporaneously. These opinions are consistently in contrast to the Dallas Court's opinion in this case.

For example, in *U.S. v. Robinson*, the Northern District Court of West Virginia examined an anonymous tip case in which the anonymous caller witnessed a black male in a bluish greenish Toyota Camry, driven by a female, load a firearm and conceal it in his pocket. The caller stated the car had just left [a particular] 7-Eleven parking lot and [caller] was leaving as well. *United States v. Robinson*, No. 3:14-CR-28, 2014 U.S. Dist. LEXIS 112383 (N.D. W.Va. August 14, 2014, no pet. h.) (not designated for publication). The parking lot in question was in a high crime area. The West Virginia court discussed how the tip was similar to *Navarette*, and distinguishable from *J.L.*:

> The caller had eyewitness knowledge of the alleged loading and possession of the firearm by the Defendant. ***He told [911 dispatch] that he actually saw the Defendant***, who was in a bluish greenish Toyota Camry, load the firearm and conceal it.

(emphasis added). *Id.* at *7. The language, "He told…that he actually saw the Defendant" is similar to the language in *Navarette*: "***Ran the reporting part*y off the roadway and was last seen approximately five minutes ago.**" (emphasis added) *Navarette*, 134 S. Ct. at 1687. *See also State v. Gates*, 145 So.3d 288 ( La. 2014) (tip alleging blue colored pickup truck almost ran couple off road while traveling on I-20; couple "relayed information about a crime they just witnessed"); *State v. McPeak*, No. 40892, 2014 Ida. App. Unpub. LEXIS 264, *1 (Idaho Ct. App. June

12

11, 2014, no pet. h.) (not designated for publication) (anonymous call "reporting that an alleged assault involving a knife had recently occurred. It was reported that the suspect was McPeak, and that ***he had entered the home of the caller*** and left in a white Ford pickup."); and *State v. Braziel*, No. A13-1183, 2014 Minn. App. Unpub. LEXIS 576, *8-9 (Minn. Ct. App. June 9, 2014, review denied) (not designated for publication) ("Next, and even more importantly, the caller claimed eyewitness knowledge of the alleged dangerous behavior. Eyewitness knowledge lends significant support to the tip's reliability, even when the caller is anonymous.").

## *Conclusion.*

This Court should grant this Petition because the Dallas Court's opinion clearly conflicts with the decisions of the Supreme Court in *Navarette*, *White*, and *J.L.*, as well as opinions from this Court and other Texas courts of appeals interpreting those Supreme Court decisions. Whether the tip and circumstances leading to the investigative detention in this case meet the evidentiary precision required by the Supreme Court in *Navarette* is an important question of law which requires the exercise of this Court's supervisory powers. TEX. R. APP. P. 66.3 (b). Justice Thomas noted that like *White*, *Navarette* is a "close case." Under the totality of the circumstances, and like *J.L.*, this is not a close case. The record merely shows that the tipster alleged information that turned out to be true: at some

13

unknown point before police got there, three black males were in a Honda outside a gas station. The police were provided with a barebones anonymous tip by a caller that contained no information that the event was observed firsthand; contained no predictive information that could be corroborated to prove the reliability of the tipster; and failed to allege a crime. These factors, along with the fact that once police arrived they found three males matching the description of the single male with a gun, and no observable evidence of criminal activity, combine to prevent a finding of reasonable suspicion.

## **PRAYER FOR RELIEF**

For the reasons herein alleged, Appellee prays this Court grant this petition, reverse the opinion of the Dallas Court of Appeals, and affirm the trial court's order granting Appellee's motion to suppress.

Respectfully submitted,

/s/ Kathleen A. Walsh

Kathleen A. Walsh
Assistant Public Defender
State Bar No. 20802200

Lynn Richardson
Chief Public Defender
Dallas County

/s/ Loren M. Collins

Loren  M. Collins
Assistant Public Defender
State Bar No. 24077823

Frank Crowley Courts Building
133 N. Riverfront Blvd., LB-2
Dallas, TX.  75207-4399
(214) 653-3550 (telephone)
(214) 653-3539 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of March, 2015, a true copy of the foregoing petition for discretionary review was served on the Appellate Division of the Dallas County District Attorney's Office by electronic delivery to DCDAAppeals@dallascounty.org.; and was also served by electronic delivery to Lisa C. McMinn, State Prosecuting Attorney, at Lisa.McMinn@spa.texas.gov.

*/s/ Kathleen A. Walsh*
Kathleen A. Walsh

## CERTIFICATE OF COMPLIANCE

I hereby certify that the word count in this document is 4,371 which is prepared in Microsoft Word 2010.

*/s/ Kathleen A. Walsh*
Kathleen A. Walsh



APPENDIX



No *Shepard's* Signal™
As of: March 19, 2015 12:54 PM EDT

## *State v. Jackson*

Court of Appeals of Texas, Fifth District, Dallas

January 21, 2015, Opinion Filed

No. *05-14-00278-CR*, No. 05-14-00279-CR

**Reporter**
2015 Tex. App. LEXIS 507

THE STATE OF TEXAS, Appellant v. JARQUIS D. JACKSON, Appellee

**Notice:** PLEASE CONSULT THE TEXAS RULES OF APPELLATE PROCEDURE FOR CITATION OF UNPUBLISHED OPINIONS.

**Prior History:** [*1] On Appeal from the County Criminal Court No. 3. Dallas County, Texas. Trial Court Cause Nos. MB13-62072 and MB13-62071.

## Core Terms

reasonable suspicion, caller, gun, tip, trial court, anonymous tip, marijuana, tipster, gas station, reliability, detention, suppress

## Case Summary

### Overview

HOLDINGS: [1]-An anonymous call leading to defendant's detention contained sufficient indicia of reliability to provide officers with reasonable suspicion to believe criminal activity was afoot; [2]-The tip was an eyewitness account of a potentially dangerous situation, was made contemporaneously with the event, and was made through the 911 system; [3]-The tipster gave information on the man's attire and location as well as specific details on his vehicle, such as make, color, the lack of a front license plate, blue flashing headlights and how the car was parked, and police verified these details before making the stop; [4]-Because the officers had reasonable suspicion to conduct an investigatory stop, the trial court erred in granting defendant's motion to suppress.

### Outcome

Reversed and remanded.

## LexisNexis® Headnotes

Criminal Law & Procedure > Preliminary Proceedings > Pretrial Motions & Procedures > Suppression of Evidence

Criminal Law & Procedure > ... > Standards of Review > De Novo Review > Motions to Suppress

Criminal Law & Procedure > ... > Standards of Review > Deferential Review > Credibility & Demeanor Determinations

Evidence > ... > Testimony > Credibility of Witnesses > General Overview

Criminal Law & Procedure > Preliminary Proceedings > Pretrial Motions & Procedures > Suppression of Evidence

Criminal Law & Procedure > ... > Standards of Review > De Novo Review > Motions to Suppress

Criminal Law & Procedure > ... > Standards of Review > Deferential Review > Credibility & Demeanor Determinations

Evidence > ... > Testimony > Credibility of Witnesses > General Overview

*HN1* In reviewing a trial court's ruling on a motion to suppress, the appellate court applies a bifurcated standard of review. The appellate court affords almost total deference to a trial judge's determination of historical facts and mixed questions of law and fact that rely upon the credibility of a witness. The appellate court reviews de novo pure questions of law and mixed questions of law and fact that do not depend on credibility determinations. When the trial court makes explicit fact findings, the appellate court determines whether the evidence, viewed in the light most favorable to the trial court's ruling, supports these findings. The appellate court then reviews the trial court's legal ruling de novo unless the explicit fact findings supported by the record are also dispositive of the legal ruling.

Constitutional Law > ... > Fundamental Rights > Search & Seizure > General Overview

Criminal Law & Procedure > Search & Seizure > Warrantless Searches > Investigative Stops

Evidence > Inferences & Presumptions > Inferences

Constitutional Law > ... > Fundamental Rights > Search & Seizure > General Overview

Criminal Law & Procedure > Search & Seizure > Warrantless Searches > Investigative Stops

Evidence > Inferences & Presumptions > Inferences

*HN2* Under the Fourth Amendment, a warrantless detention of a suspect that amounts to less than a full-blown custodial arrest must be justified at least by a reasonable suspicion. A police officer has reasonable suspicion to detain a person if he has specific, articulable facts that, combined with rational inferences from those facts, would lead him reasonably to conclude that the person detained is, has been, or soon will be engaged in criminal activity. In determining whether an officer has reasonable suspicion to detain, the court looks at the totality of the circumstances through an objective lens, disregarding the officer's subjective intent. Although some circumstances may seem innocent in isolation, they will support an investigatory detention if their combination leads to a reasonable conclusion that criminal activity is afoot.

Constitutional Law > ... > Fundamental Rights > Search & Seizure > General Overview

Criminal Law & Procedure > Search & Seizure > Warrantless Searches > Investigative Stops

Constitutional Law > ... > Fundamental Rights > Search & Seizure > General Overview

Criminal Law & Procedure > Search & Seizure > Warrantless Searches > Investigative Stops

*HN3* An anonymous tip alone is seldom sufficient to establish reasonable suspicion. Reasonable suspicion is dependent not only on the content of the information possessed by law enforcement, but also on its reliability. To support reasonable suspicion, an anonymous tip requires some indicia that the caller is credible or that his information is reliable.

Constitutional Law > ... > Fundamental Rights > Search & Seizure > General Overview

Criminal Law & Procedure > Search & Seizure > Warrantless Searches > Investigative Stops

Constitutional Law > ... > Fundamental Rights > Search & Seizure > General Overview

Criminal Law & Procedure > Search & Seizure > Warrantless Searches > Investigative Stops

*HN4* An anonymous tip contains adequate indicia of reliability to support reasonable suspicion if the content of the tip indicates it (1) was based on eyewitness knowledge, which lends significant support to the tip's reliability; (2) was contemporaneously made, which is especially trustworthy because substantial contemporaneity of event and statement negate the likelihood of deliberate or conscious misrepresentation; and (3) was made to the 911 emergency system, which has some features that allow for identifying and tracing callers, and thus provides some safeguards against making false reports with immunity.

**Counsel:** For Appellants: Brian Higginbotham, Craig Watkins, Dallas, TX.

For Appellees: Kathleen Walsh, Loren M. Collins, Katherine Drew, Lynn Richardson, Dallas, TX.

**Judges:** MOLLY FRANCIS, JUSTICE, Evans, and Stoddart. Opinion by Justice Francis.

**Opinion by:** MOLLY FRANCIS

# Opinion

### MEMORANDUM OPINION

Opinion by Justice Francis

Jarquis D. Jackson was charged with the misdemeanor offenses of unlawfully carrying a weapon and possession of marijuana. Appellant moved to suppress the evidence, arguing his detention was illegal because officers did not have reasonable suspicion. The trial court granted the motion, and the State appealed. In a single issue, the State argues the trial court erred in concluding an anonymous tip did not support the officers' reasonable suspicion. We agree with the State. Therefore, we reverse the trial court's orders and remand for further proceedings consistent with this opinion.

At about 4 a.m. on September 2, 2013, a caller reported to 911 that a black male in a white T-shirt was "displaying" a gun on the parking lot of a gas station. The caller reported there were "a lot of people" on the parking lot, and the man was with a group of seven other men. The caller stayed on the line with 911 while officers responded.

Dallas Police Officers J. [*2] Dickson, Craig Thomas, and Lance Crawford were dispatched to the scene. The gas station is in a high-crime area with a nightclub nearby.

While driving there, the officers received information that the man with the gun had gotten into a dark-colored Honda with no front license plate and blue headlights; the car was backed into the gas station and its headlights were flashing.

When the officers arrived at the scene, they saw the Honda with the flashing lights matching the description given by the caller. As the officers got out of their vehicles, the Honda started to pull away. The officers, who had their guns drawn but at their side, motioned for the car to stop, and the vehicle did. As they approached the vehicle, Crawford said he could smell marijuana. The officers had the three occupants, who were all dressed in white T-shirts, get out of the car while they patted them down for weapons. No weapons were found. The doors of the vehicle were left open when the occupants got out. While one of the officers checked for warrants, Thomas walked around the vehicle and spotted a gun in plain view on the passenger floorboard. The gun was "slide-side down, with the grip closest facing the driver." [*3] Appellant said the gun was his. The warrant check revealed that appellant had outstanding warrants, and officers arrested him. In the search incident to arrest, they found marijuana in his pocket. Marijuana was also found in the vehicle.

At the scene, Crawford used the number on the 911 call sheet to contact the tipster to see if he could "get more information." The man told Crawford he was there when officers drove up and confirmed they were investigating the correct vehicle. Crawford asked for the man's name, but he declined, saying he was "just passing through town" and wanted "to stay anonymous."

At the conclusion of the hearing, the trial court made oral findings consistent with the evidence and recessed for two weeks. At the subsequent hearing, appellant argued the anonymous tip did not provide reasonable suspicion for the investigatory detention and relied on the U.S. Supreme Court's decision in *Florida v. J.L, 529 U.S. 266, 120 S. Ct. 1375, 146 L. Ed. 2d 254 (2000)*. The trial court agreed and granted the motion to suppress.

*HN1* In reviewing a trial court's ruling on a motion to suppress, we apply a bifurcated standard of review. *Martinez v. State, 348 S.W.3d 919, 922-23 (Tex. Crim. App. 2011)*. We afford almost total deference to a trial judge's determination of historical facts and mixed questions of law and fact [*4] that rely upon the credibility of a witness. *Id.* We review de novo pure questions of law and mixed questions of law and fact that do not depend on credibility determinations. *Id.* When, as here, the trial court makes explicit fact findings, we determine whether the evidence, viewed in the light

most favorable to the trial court's ruling, supports these findings. *State v. Kelly, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006)*. We then review the trial court's legal ruling de novo unless the explicit fact findings supported by the record are also dispositive of the legal ruling. *Id.*

*HN2* Under the *Fourth Amendment*, a warrantless detention of a suspect that amounts to less than a full-blown custodial arrest must be justified at least by a reasonable suspicion. *State v. Elias, 339 S.W.3d 667, 674 (Tex. Crim. App. 2011)*. A police officer has reasonable suspicion to detain a person if he has specific, articulable facts that, combined with rational inferences from those facts, would lead him reasonably to conclude that the person detained is, has been, or soon will be engaged in criminal activity. *Id.* In determining whether an officer has reasonable suspicion to detain, we look at the totality of the circumstances through an objective lens, disregarding the officer's subjective intent. *Matthews v. State, 431 S.W.3d 596, 603 (Tex. Crim. App. 2014)*. Although some circumstances may seem innocent [*5] in isolation, they will support an investigatory detention if their combination leads to a reasonable conclusion that criminal activity is afoot. *Id.*

*HN3* An anonymous tip alone is seldom sufficient to establish reasonable suspicion. *Id.* Reasonable suspicion is dependent not only on the content of the information possessed by law enforcement, but also on its reliability. *Id.* To support reasonable suspicion, an anonymous tip requires some indicia that the caller is credible or that his information is reliable. *Id.*

Since the trial court's ruling, the United States Supreme Court issued its opinion in *Navarette v. California, 134 S. Ct. 1683, 188 L. Ed. 2d 680 (2014)*, which considered the sufficiency of an anonymous tip to conduct an investigatory stop. In *Navarette*, a 911 caller, presumed by the court to be anonymous, reported that a vehicle ran her car off the road. The caller provided the location as well as a description of the vehicle and license plate number. The 911 dispatcher relayed the information to officers. *134 S. Ct. at 1686-87*. About eighteen minutes later, officers spotted a vehicle some nineteen miles south of the location reported in the tip. *Id. at 1689*. The officers pulled the truck over. As they approached, they smelled marijuana and a subsequent search revealed 30 [*6] pounds of marijuana in the bed of the truck. *Id. at 1687*.

The court held *HN4* the anonymous tip contained adequate indicia of reliability to support reasonable suspicion because the content of the tip indicated it (1) was based on eyewitness knowledge, which "lends significant support to

the tip's reliability"; (2) was contemporaneously made, which is "especially trustworthy because 'substantial contemporaneity of event and statement negate the likelihood of deliberate or conscious misrepresentation'"; and (3) was made to the 911 emergency system, which "has some features that allow for identifying and tracing callers, and thus provide some safeguards against making false reports with immunity." *Navarette, 134 S. Ct. at 1689-90*; *see Matthews, 431 S.W.3d at 604 n.29*.

The court distinguished its decision from that in *J.L.*, the case relied on by appellee below and on appeal. *J.L.* involved an anonymous caller who reported to the police that a young black male, wearing a plaid shirt, was standing at a particular bus stop and was carrying a gun. *529 U.S. at 268*. The court identified two critical distinctions between the *Navarette* tip and the *J.L.* tip: (1) the *J.L.* tip "provided no-basis for concluding that the tipster had actually seen the gun" and (2) there was no indication that [*7] the *J.L.* tip was made contemporaneously with criminal activity or under the stress of excitement caused by a startling event. *Id. at 1689*.

Having reviewed the evidence and the trial court's oral findings, we conclude the anonymous call leading to appellant's detention contained sufficient indicia of reliability to provide officers with reasonable suspicion to believe criminal activity was afoot. As in *Navarette*, the tip was an eyewitness account of a potentially dangerous situation, was made contemporaneously with the event, and was made through the 911 system. As found by the trial court, the tipster called 911 in the early morning hours and reported a man was publicly "displaying" a gun on the parking lot of a gas station. The gas station was open for business and was located near a nightclub in a high-crime area. As officers went to the scene, the tipster stayed on the line with the 911

dispatch and provided other information in real time. The tipster gave information on the man's attire and location as well as specific details on his vehicle, such as make, color, the lack of a front license plate, blue flashing headlights and how the car was parked. Police verified these details before making [*8] the stop. After the stop, one of the officers contacted the tipster, who verified the officers were investigating the correct vehicle. Because we conclude the officers had reasonable suspicion to conduct an investigatory stop, the trial court erred in granting the motion to suppress. We sustain the State's sole issue.

We reverse the trial court's orders and remand these causes for proceedings consistent with this opinion.

/Molly Francis/

MOLLY FRANCIS

JUSTICE

**JUDGMENT**

Based on the Court's opinion of this date, the trial court's order granting the motion to suppress is **REVERSED** and the cause **REMANDED** for further proceedings consistent with this opinion.

Judgment entered January 21, 2015.

**JUDGMENT**

Based on the Court's opinion of this date, the trial court's order is **REVERSED** and the cause **REMANDED** for further proceedings consistent with this opinion.

Judgment entered January 21, 2015.